# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| FREDERICK IRVIN, #16620-039, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 9:08-3038-HFF-BM |
| ) | |
| v. ) | |
| ) | |
| FEDERAL BUREAU OF PRISONS ) | |
| AND WARDEN JOHN OWEN, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Respondents. ) | |
| _____) | |

This action has been filed by the Petitioner, pro se, pursuant to 42 U.S.C. § 2241. Petitioner is an inmate at the Federal Correctional Institution ("FCC") in Williamsburg, South Carolina, serving a term of incarceration following convictions on drug and firearms charges in Michigan. See Respondents' Exhibit A (SENTRY Sentence Computation). In this petition, Petitioner seeks to have his administrative disciplinary convictions for possession of a hazardous tool (cell phone), possession of a locking device, possession of contraband, and refusing an order, expunged. Petitioner also seeks restoration of good time that was disallowed as a result of this disciplinary action. He alleges his due process rights were violated because he was questioned about the incident when the Bureau of Prison's (BOP) investigation was suspended pending investigation by the FBI and the U.S. Attorney's office for possible criminal prosecution. He also asserts that his Unit Disciplinary Committee (UDC) hearing was improperly delayed.

Respondents filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 19, 2008. As the Petitioner is proceeding pro se, a Roseboro order was entered by the Court on November 24, 2008, advising Petitioner of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Petitioner was specifically



1

advised that if he failed to respond adequately, the Respondents' motion may be granted, thereby ending his case. Petitioner thereafter filed a memorandum in opposition to the Respondents' motion on December 4, 2008.

This matter is now before the Court for disposition.[1]

**Background**

On June 28, 2006, R. Cruz, a staff member, was conducting rounds in Cardinal Unit at the federal medical center in Lexington, Kentucky (FMC Lexington). See Respondents' Exhibit C (Incident Report). Cruz noticed that the window to cell C06-424 had a towel placed over the window, blocking the view into the room. Cruz attempted to open the door, but it was barricaded shut, so Cruz proceeded to knock on the door and order whoever was in the room to open the door. After a few seconds, the towel moved and Cruz saw the Petitioner inside the room, and after an additional few seconds, Petitioner finally opened the door. Cruz began to pat search the Petitioner, and when it appeared Petitioner might attempt to leave, Cruz secured the doorway and ordered Petitioner not to move.

As Cruz continued the pat search, Petitioner reached into his right pocket, rushed toward the window in his room, and threw a silver looking device out of the window. When Cruz ordered Petitioner to stop, he turned around and took a step toward her. Cruz proceeded to activate her body alarm while at the same time ordering Petitioner to stand back. Petitioner continued to pace the room, while Cruz continued to order him two additional times to stop pacing and stand back against the window frame. Petitioner then produced from his left pocket 61 - 37 Cent stamps, 33 -

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 19.02(B)(2)(c), D.S.C. The Respondents have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



39 Cent stamps, and 5 - 34 Cent stamps totaling $37.14. Petitioner finally sat down on the edge of his bed after the fourth order to stand back, and after staff arrived, Petitioner was escorted off the unit. At that time Cruz observed a hasp that had been placed on the door frame of Petitioner's room, which he had used to hold the door shut. The hasp was removed and sent to the Lieutenant's Office. The silver device which was thrown out of the window was retrieved from a secured fenced in area and was identified as a cell phone. See Respondents' Exhibit C.

An incident report was written charging Petitioner with: 1) possession, manufacture, or introduction of a hazardous tool (Code 108); 2) destroying or possession, of any unauthorized locking device, lock pick, or tampering with and blocking any locking device (Code 208); 3) possession of anything not authorized (Code 305); and 4) refusing to obey an order of any staff member (Code 307). See Respondents' Exhibit C. Petitioner was given a copy of the incident report the following day on June 29, 2006. Id. The matter was referred to a Lieutenant for investigation and to the UDC for processing. Id.

Due to the nature of the charges, the matter was also referred to outside law enforcement for possible prosecution. See Respondents' Exhibit D. Pursuant to 28 C.F.R. § 541.14(b)(1), the internal processing of the administrative disciplinary action was then suspended pending a decision by outside law enforcement. Id. After completion of the outside investigation, the UDC hearing was conducted on August 17, 2007. See Respondents' Exhibit C. Since this was outside the standard time for a UDC hearing, staff provided Petitioner a copy of an Advisement of Incident Report Delay on August 17, 2007, which explained the reason for the delay in processing the matter (which was that the matter had been referred to outside law enforcement). See, Respondents' Exhibit D. Because of the nature of the charges, UDC then referred the matter to a Disciplinary Hearing Officer ("DHO"). Id. Petitioner was advised of his rights before the DHO,

3



with Petitioner indicating that he wished to call two witnesses, but did not want the services of a staff representative. See Respondents' Exhibit E.

The DHO hearing was held on August 30, 2007. See Respondents' Exhibit F. Petitioner was present and made a statement to the DHO in his own defense. Id. Although Petitioner had requested two witnesses, he waived one at the time of the hearing. Id.; see also Respondents' Exhibit E. The other witness was called and testified. See Respondents' Exhibit F. Petitioner also presented a handwritten statement which was considered by the DHO. Id. After considering all of the evidence, the DHO found that Petitioner had committed the prohibited acts as charged. Id. The DHO imposed a variety of sanctions for the various offenses, including disallowance of good conduct time, disciplinary segregation, loss of visiting, commissary and telephone privileges, and a recommendation for a disciplinary transfer. Id. The DHO prepared a written report detailing the decision, the evidence relied upon, and the reasons for the sanctions imposed. Id. A copy of this written decision was delivered to the Petitioner on September 27, 2007. Id.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(C), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal

4



construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Petitioner asserts that he was questioned while the investigation was suspended, violating his due process rights, that he was not timely provided an initial hearing and that his initial hearing was not held until over 400 days later, which resulted in a loss of good time credit, and that the long intentional delay between the charge being filed and his disciplinary hearing obstructed his ability to complete his defense and to gather information needed for his defense. Petitioner also contends that prison staff failed to follow established rules and statutes by not suspending the initial report until February 20, 2007, even though an FBI investigation was ongoing. Petitioner seeks to expunge the incident report and have his record cleared and good-time credits restored. See generally, Petition.

Respondents concede that Petitioner has exhausted his administrative remedies, and that this Petition is properly before this Court.[2] See McIntosh v. United States Parole Comm'n, 115 F.3d 809, 811 (10th Cir. 1997)[Prisoner may use § 2241 to challenge deprivation of good-time credits]; Hamm v. Saffle, 300 F.3d 1213, 1216 (10th Cir. 2002); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984). However, after careful review of the material and arguments presented, the undersigned finds that Petitioner has failed to show entitlement to relief on his claims.

In a prison disciplinary setting, an inmate is entitled to only a minimal standard of due

---

[2]Respondents correctly point out that the BOP is not a proper party Respondent, since the proper respondent is the warden of the institution where the Petitioner is confined, not the BOP. Rumsfeld v. Padilla, 542 U.S. 426, 433-436 (2004); Scott v. United States, 586 F.Supp. 66, 68 n. 1 (E.D.Va. 1984)(citing Copeland v. State of Mississippi, 415 F.Supp. 1271, 1272 n. 1 (N.D.Miss. 1976). Petitioner does not contest Respondents' argument that the BOP is not a proper party Respondent in this case.



process. If the following requirements are satisfied, prison officials have met this minimal standard.

      1.      Advance written notice of the charges;

      2.      A written statement by the committee, citing the evidence on which they relied and the reasons for the action taken; and

      3.      The right by the inmate/defendant to call witnesses and present documentary evidence, if institutional safety will not be jeopardized.

Wolff v. McDonnell, 418 U.S. 539, 563-576 (1974); Luna v. Pico, 356 F.3d 481, 487-488 (2d Cir. 2004). Here, it is uncontested that Petitioner was given advance written notice of the charges, that he was advised that the matter had been referred to a DHO for hearing, and that he was provided with a notice of the disciplinary hearing before the DHO as well as with a copy of his inmate rights. See Respondents' Exhibits C, D, E and F. Petitioner signed these documents. Id. The DHO hearing was thereafter conducted on August 30, 2007, at which Petitioner was present and made a statement in his own defense. See Respondents' Exhibit F. Petitioner had requested that two witnesses be present, but he waived one at the time of the hearing. Id.; see also Respondents' Exhibit E. The other witness was called and testified. See Respondents' Exhibit F. Petitioner also presented a handwritten statement which was considered by the DHO. Id.

      After considering all of the evidence, the DHO found that Petitioner had committed the prohibited acts as charged and imposed a variety of sanctions for the various offenses, including disallowance of good conduct time, disciplinary segregation, loss of visiting, commissary and telephone privileges, and a recommendation for a disciplinary transfer. Id. The DHO also prepared a written report detailing the decision, the evidence relied upon, and the reasons for the sanctions imposed, and a copy of this written decision was delivered to the Petitioner on September 27, 2007. Id. There is nothing in this case history which shows a violation of Wolff and its progeny.



Petitioner contends that his due process rights were violated when his hearing was not held within three days and when he was questioned during the time that the incident report was suspended. Under the applicable C.F.R.,

> [e]ach inmate so charged is entitled to an initial hearing before the UDC, *ordinarily* held within three work days from the time staff became aware of the inmate's involvement in the incident.

See 28 C.F.R. § 541.15(b)[emphasis added].

However, in the relevant part, 28 C.F.R. § 541.14(b)(1) provides:

> When it appears likely that the incident may be the subject of criminal prosecution, the investigating officer shall suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation or other investigative agency interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur.

"These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court." Donaldson v. Samuels, No. 07-1072, 2007 WL 3493654 at * 4 (M.D.Pa. Nov. 13, 2007)(Citing Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa. 1994).

Here, Petitioner was notified that his hearing was delayed because of the FBI investigation. See Respondents' Exhibit D. Therefore, the Respondents did not violate BOP procedure by not having his initial hearing within three days. See Scott v. Craig, No. 05-1359, 2008 WL 4866051 at *4-5 (N.D.N.Y. Nov. 7, 2008)[Petitioner did not show a due process violation where his hearing was delayed due to it appearing likely that the incident may be the subject of criminal prosecution]. In any event,

> the delay in Petitioner's initial hearing does not automatically equate to a violation of his Due Process rights. See Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D.Pa. 1992)["The Constitution does not require strict adherence to administrative regulations and guidelines."] The Constitution only requires compliance with minimal federal due process standards. Id. Wolff does not set a three-or seven-day limit, or any time limit, for the hearing. No Due Process violation occurred by holding petitioner's initial hearing outside of the "ordinary" three-day period.

7



Donaldson, 2007 WL 3493654 at * 5.

Therefore, Petitioner has not shown that holding his initial hearing outside the three-day period violated his due process rights. Mayo v. Hogsten, No. 06-2241, 2007 WL 1521232 at * 5 (M.D.Pa. May 23, 2007)(citing Von Kahl, 85 F.Supp. at 1421 -1422)["[T]his court is reluctant to overtax and/or hamstring prison officials' execution of disciplinary policies and procedures by mandating an automatic remand for technical noncompliance with a regulation, absent some showing of prejudice to the inmate."].

Additionally, although Petitioner makes the assertion that his investigation was hampered by the delay in receiving his hearing, he has not shown that this was the case. While Petitioner argues that the hasp was left by a previous inmate in his cell, and that testimony from a previous cellmate would have shown this, it is undisputed that Petitioner was alone in the cell when the cell would not open for the officer and that the officer determined the hasp was what prevented the cell door from opening. Petitioner was charged and found guilty under the section dealing with possession of any unauthorized locking device, lock pick, or with tampering with and blocking any locking device (Code 208). Therefore, even if the hasp had been previously left in the cell, the findings show some evidence that Petitioner possessed the hasp and used it to block the locking device on his cell. Petitioner has not shown how the delay in receiving his hearing prejudiced him or that his due process rights were violated. Scott, 2008 WL 4866051, at * 5.

Petitioner also contends that he is entitled to relief because the BOP staff questioned him while his incident report was referred for possible criminal prosecution.[3] Respondents' counsel

---

[3]Petitioner also disputes exactly when the matter was referred to the FBI, arguing that the matter was referred later than represented by the Respondents. Petitioner supports this assertion with an affidavit stating when he was questioned by the FBI. However, when the FBI actually questioned
(continued...)

8



represents that the BOP staff were advised that they could continue with their internal investigation[4]; however, there is no citation to any document in the record supporting this contention, and the undersigned has been unable to locate any document filed to support this position.[5]  In any event, "[t]he prison's failure to follow its own procedures will not result in a due process violation as long as the inmate is provided with the process he is due under Wolff . . . ."  See Macia v. Williamson, 219 Fed.Appx. 229, 233 (3rd Cir. Mar. 13, 2007)[Finding that the BOP did not violate prisoner's Constitutional rights by failing to suspend the disciplinary action pending possible criminal prosecution].

In sum, there is no evidence to show a due process violation relating to these charges, as the evidence before the Court reflects that Petitioner was provided with the minimal standard of due process.  See Respondents' Exhibits C-F.  The evidence reflects that Petitioner was provided with written notice of the charges and was given the opportunity to have his accuser present at the hearing and to present his own testimony and evidence.  The evidence further reflects, as is shown by Petitioner's own signature on the hearing decision, that he was provided with copies of the final report and decision, which cited the evidence on which the Hearing Officer relied and the reasons for the action taken.  See Wolff v. McDonnell, 418 U.S. at 563-576; Luna v. Pico, 356 F.3d 481, 487-

---

[3](...continued)
Petitioner is not necessarily indicative of when the matter was referred to them.  In any event, this dispute about when the matter was referred to the FBI would not assist Petitioner in showing a due process violation.

[4]The BOP may be allowed to question an inmate during a pending investigation.  See 28 C.F.R. § 541.14(b)(1).

[5]See Gans v. Gray, 612 F.Supp. 608, 619 (E.D.Pa. 1985)[mere statements made in counsel's briefs are not evidence for the purpose of supporting or opposing a motion for summary judgment]; cf Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995)[counsel's statements are not evidence].



488 (2d Cir. 2004) [noting that due process requirements are satisfied where a prisoner is given advance written notice of the charges, the right to participate in the hearing and call witnesses, and provided with a written statement setting out the decision and the reasons therefore]. None of Petitioner's exhibits and evidence show that his due process rights were violated.

Further, in an institutional setting, the fact-finder need only show that some evidence existed to support the decision. Superintendent, Massachusetts Correction Institution v. Hill, 472 U.S. 445, 456-457 (1985); see Piggie v. Cotton, 344 F.3d 674, 677 (7th Cir. 2003). The Supreme Court in Superintendent evidenced a distaste for allowing the federal courts to review the outcome of prison disciplinary actions, and under the applicable caselaw the "some" evidence standard for a disciplinary decision is sufficient to pass scrutiny under the due process clause. Id; Baker v. Lyles, 904 F.2d 925 (4th Cir. 1990); Sales v. Murray, 862 F.Supp. 1511 (W.D.Va. 1994); McClung v. Shearin, No. 03-6952, 2004 WL 225093 (4th Cir. Feb. 6, 2004). The evidence presented shows compliance with this standard. Therefore, Petitioner's claims are without merit.

## Conclusion

Based on the foregoing, it is recommended that the Respondents' motion for summary judgment be **granted**, with prejudice, and that the Petition be dismissed.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

June 9, 2009
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P. O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).



11